# 14-2916-cv

*To be Argued by:*
JOHN J. SHAEFFER
*(Pro Hac Vice)*

# United States Court of Appeals
## for the
## Second Circuit

BARNEY J. NG, as the Sole Trustee of the Barney J. Ng Living Trust,

*Plaintiff-Counter-Defendant-Appellant,*

– v. –

STEPHEN SCHRAM,

*Defendant-Counter-Claimant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT

THOMAS H. CURTIN
LATHROP & GAGE LLP
230 Park Avenue, Suite 2400
New York, New York 10169
(212) 850-6220

– and –

JOHN J. SHAEFFER
LATHROP & GAGE LLP
1888 Century Park East
Los Angeles, California 90067
(310) 709-4600

*Attorneys for Plaintiff-Counter-Defendant-Appellant*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUE.......................................................................2

INTRODUCTION ........................................................................................3

STATEMENT OF THE CASE.......................................................................5

I.    COMPLIANCE WITH LOCAL RULE 28.1(B) ..................................5

II.   STATEMENT OF FACTS .............................................................5

     A.    The Snake River Resort Project and Related
          Financing ................................................................................6

     B.    The December 4, 2007 Separation Agreement ...............................7

III.  PROCEDURAL HISTORY .......................................................11

SUMMARY OF THE ARGUMENT ..............................................................16

LEGAL ARGUMENT.................................................................................18

I.    STANDARD OF REVIEW FOR DENIAL OF MOTION
     FOR JUDGMENT AS A MATTER OF LAW AND FOR
     NEW TRIAL ..........................................................................18

II.   OPERATION OF THE PAROL EVIDENCE RULE
     UNDER WYOMING LAW. ......................................................20

III.  EVIDENCE OF THE RELEASE AGREEMENT
     CONFLICTS WITH WYOMING'S APPLICATION OF
     THE PAROL EVIDENCE RULE. ............................................24

     A.    The Release Agreement Alters the Consideration
          Given for the Guarantee ..........................................................24

     B.    The Release Agreement is not Separate and Distinct
          From or Independent of the Guarantee within the
          Meaning of Wyoming Law .......................................................25

IV.   NO REPORTED OPINION HAS HELD THAT A
      CONTEMPORANEOUS ORAL AGREEMENT
      PROVIDING A METHOD TO DISCHARGE A
      FINANCIAL OBLIGATION TO BE SEPARATE AND
      DISTINCT FROM, AND INDEPENDENT OF A
      WRITING AND NOT SUBJECT TO THE PAROL
      EVIDENCE RULE. ................................................................... 33

CONCLUSION ................................................................................. 38

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Applied Genetics v. First Affiliated Securities*,
    912 F.2d 1238 (10th Cir. 1990) .............................................................. 33

*Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med.*
    *Ctr.*,
    425 F.3d 126 (2d Cir. 2005) .................................................................. 18

*Bank Leumi Trust Co. of New York v. Wulkan*,
    735 F. Supp. 72 (S.D.N.Y. 1990) ......................................................... 34

*Barrett v. First Nat. Bank of Green River*,
    62 P.2d 318 (Wyo. 1936) ....................................................................... 25

*Belden v. Thorkildsen*,
    156 P.3d 320 (Wyo. 2007) ............................................................. *passim*

*Bethurem v. Hammett*,
    736 P.2d 1128 (Wyo. 1987) ................................................................... 33

*Bower v. Weisman*,
    674 F. Supp. 113 (S.D.N.Y. 1987) ................................................. 29, 37

*Bushnell v. Elkins*,
    245 P. 304 (Wyo. 1926) ............................................................ 19, 22, 24

*Canadian Bank of Commerce v. Berg*,
    17 F.2d 867 (9th Cir. 1927) ............................................................ 34, 35

*Cargill Com'n Co. v. Swartwood*,
    198 N.W. 536, 159 Minn. 1 (Minn. 1924) ........................................... 29

*Cary v. Manfull*,
    287 P. 433 (1930) .................................................................................. 24

*Cordova v. Gosar*,
    719 P.2d 625 (Wyo. 1986) .................................................................... 31

*Dambley v. Duconge*,
4 So.2d 616 (La. Ct. App. 1941)..............................................................34

*Dayvault v. Baruch Oil Corp.*,
231 F.2d 413 (1956)................................................................................34

*Demple v. Carroll*.
133 P. 137 (Wyo. 1913)..........................................................................20

*Diesel v. Town of Lewisboro*,
232 F.3d 92 (2d Cir. 2000) ......................................................................18

*First Nat. Bank in Dallas v. Love*,
584 S.W.2d 345 (1979)............................................................................37

*First National Bank v. Swan*,
23 P. 743 (1890)......................................................................................23

*Frank L. Smith Tire Store v. Firestone Tire & Rubber Co.*,
68 S.W.2d 577 (1934)..............................................................................37

*Gilbert v. Moline Plow Co.*,
119 U.S. 491 (1886)................................................................................29

*Learning Annex Holdings, LLC v. Rich Global, LLC*,
860 F.Supp.2d 237 (S.D.N.Y. 2012) ......................................................18

*Lefforge v. Rogers*,
419 P.2d 625 (1966)................................................................................21

*Mellon Bank Corp. v. First Union Real Estate*,
951 F. 2d 1399 (3d Cir. 1991) ................................................................29

*Merrill Lynch Interfunding, Inc. v. Argenti*,
155 F.3d 113 (2d Cir. 1998) ....................................................................18

*Michigan Bank Nat. Ass'n v. J. Kahlich, Inc.*,
179 S.W.2d 29 (Mich. App. 1970) ..........................................................36

*Montgomery Ward & Co. v. Duncan*,
311 U.S. 243 (1940)................................................................................20

*North American Uranium Inc. v. Johnston*,
   316 P.2d 325 (Wyo. 1957) .......................................................... 21

*Presley v. U.S. Postal Service*,
   317 F.3d 167 (2d Cir. 2003) ....................................................... 20

*Stickney v. Hughes*,
   75 P. 945 (Wyo. 1904) ............................................................... 25

*Western Nat. Bank of Lovell v. Moncur*,
   624 P.2d 765 (1981) ............................................................. 21, 30

*Wright v. Krouskop*,
   108 P.2d 282 (Wyo. 1940) .......................................................... 28

## Statutes & Other Authorities

28 U.S.C. § 1291 ............................................................................ vi

28 U.S.C. § 1332 ............................................................................ vi

Fed. R. App. P. 4 ........................................................................... 5

Fed. R. App. P. 32 ......................................................................... 40

Fed. R. App. P. 32 ......................................................................... 40

Fed. R. Civ. P. 50 ............................................................... vi, 5, 18

Fed. R. Civ. P. 59 ......................................................................... 20

LOCAL RULE 28.1(B) ................................................................... 5

*Parol Evidence Rule as Applied to Written Guaranty*, 33
   A.L.R. 960 (1954) ............................................................... 21, 37

# JURISDICTIONAL STATEMENT

Appellant BARNEY J. NG, ("Ng") hereby appeals the judgment issued by the Southern District of New York (Ronnie Abrams, J.) on December 11, 2013 following a jury trial held November 19-22, 2013. [Joint Appendix ("A") A-227] The District Court had diversity jurisdiction over this civil action in accordance with 28 U.S.C. § 1332(a)(1) as Ng and Schram are citizens of different States and the matter in controversy exceeded the sum or value of $75,000. Ng filed a timely motion for judgment notwithstanding the verdict or, in the alternative for a new trial, in accordance with Fed. R. Civ. P. 50(b) and 59 on December 9, 2013. After the filing of the opposition brief by Respondent Stephen Schram ("Schram") and Ng's reply brief, the District Court – without oral argument – denied Ng's motion on July 31, 2014. [A-229].

Subsequently, Ng filed a timely notice of appeal under Fed. R. App. P. 4(a)(4)(A)(i) & (iv) on August 14, 2014. [A-233]. This Court has jurisdiction over this appeal of the District Court's judgment and denial of Ng's Motion for Judgment as a Matter of Law pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUE</u>

Whether a written and enforceable guarantee to make full payment on a loan can be discharged by a contemporaneous non-written release agreement?

# INTRODUCTION

In more than 200 years of American jurisprudence, no reported decision has allowed an integrated, unambiguous, written obligation to be discharged pursuant to the terms of a separate, contemporaneous agreement that is not also in writing and signed by the parties. Similarly, all reported opinions exclude evidence of such a separate, contemporaneous agreement cited as an inducement to enter the written contract, where the writing itself sets forth the consideration for the assumed obligation. Moreover, the parol evidence rule also bars evidence offered to prove a separate, contemporaneous oral agreement that is not distinct from, and independent of, the unambiguous written agreement.

Nevertheless, before empaneling a jury, the District Court ruled that the oral release agreement proffered by Defendant and Respondent Stephen Schram was admissible to show Schram had been discharged from his obligations under the written guarantee that Schram had signed in favor of Plaintiff and Appellee Barney Ng. Based on this ruling, the jury heard evidence of a purported agreement that was not in writing, releasing Schram from his obligations he had assumed under the written guarantee – a guarantee that the District Court had previously determined was valid and enforceable. The District Court's ruling, however, ignored the well-

recognized distinction in Wyoming law[1] between agreements that are independent from one another and those that are dependent on each other.

This distinction separates this case from the only authority the District Court relied on to support its ruling that the jury could hear anything concerning an alleged release agreement in this case: *Belden v. Thorkildsen,* 156 P.3d 320 (2007). As set forth in greater detail below, evidence relevant to whether the owners of the corporation had separately agreed to their respective responsibility for the corporate debt – the question at issue in *Belden* – is neither inconsistent nor dependent upon -- nor even relevant to -- the corporation's obligation to its lenders. By contrast here, and unlike *Belden*, an agreement to release a guarantee to make full payment of notes short of the underlying obligation being paid in full cannot – by any rule of logic, grammar or law – be consistent with or independent from a written agreement that irrevocably guarantees that the notes be paid in full.

Ng, therefore, respectfully asks the Second Circuit to review the District Court's decision that Schram could prove the existence of a release agreement separate and distinct from, and independent of, the written guarantee and overturn that

---

[1] In accordance with the terms of the Agreement at issue, any disputes arising from the agreement are to be determined under Wyoming law. [A-98 (Trial Exhibit 2 at p. 14)] Wyoming law, however, is not substantially different on this issue from the laws of the rest of the United States.

decision.  Ng also requests that the Second Circuit reverse the jury's verdict, or in the alternative, award a new trial.

## STATEMENT OF THE CASE

### I.   COMPLIANCE WITH LOCAL RULE 28.1(B)

As set forth above, this case centers on whether a written and enforceable guarantee to make full payment on a loan can be discharged by a contemporaneous non-written release agreement.  The District Court improperly permitted Schram to introduce such inadmissible parol evidence at trial, and judgment was issued by the Southern District of New York (Ronnie Abrams, J.) on December 11, 2013 following a jury trial held November 19-22, 2013.  Ng filed a timely motion for judgment notwithstanding the verdict or, in the alternative for a new trial, in accordance with Fed. R. Civ. P. 50(b) and 59 on December 9, 2013.  After the filing of the opposition brief by Schram and Ng's reply brief, the District Court denied Ng's motion on July 31, 2014.  Subsequently, Ng filed a timely notice of appeal under Fed. R. App. P. 4(a)(4)(A)(i) & (iv) on August 14, 2014.

### II.   STATEMENT OF FACTS

Although the facts subject to the legal issue relevant to this appeal are relatively limited, understanding the factual context before the District Court and the jury is important.  With this in mind and for the convenience of the Court, the following facts were established at trial.

### A. The Snake River Resort Project and Related Financing

Ng is the former president of Bar-K, Inc. ("Bar-K"), a California corporation that pursued real estate investment opportunities for R.E. Loans, LLC ("RE Loans"), a real estate investment fund that operates out of Lafayette, California. [A-82 (Trial Transcript ("TT") at 119:5-122:9]. Schram is, and at all relevant times to the claims made in this action has been, the chairman of DPS, a real estate development firm based in New York specializing in resort projects. [A-181 (TT at 465:15-466:6]

At some point prior to December 2004, CCI, a Wyoming corporation controlled at the time by Richard Edgecomb, became the owner of a 540-acre resort development in Jackson Hole, Wyoming (the "Snake River Resort Property"). [A-81 (TT at 115:8-14]. In December 2004, Ng, on behalf of Bar-K, arranged for RE Loans to provide $64 million in financing to CCI as part of a bankruptcy restructuring. [A-81, A-83 (TT at 115:8-17, 136:13-16)]. This financing took the form of a promissory note (the "Note") secured by mortgages on the Snake River Resort Property as well as approximately 144 acres of adjacent land owned by Edgecomb (the "Mortgages"). [A-81 (TT at 115:8-10, 18-21)].

As part of the same reorganization, CCI and DPS formed the Snake River Sporting Club Development Company, LLC (the "Company") to complete the resort development. [A-81 (TT at 115:8-10, 22-25)] DPS assumed control over the

management and marketing of the Snake River Resort Property.  [A-81 (TT at 115:8-10, 116:1-4)].

The Company agreed to pay Bar-K a nine million dollar ($9,000,000.00) fee (the "Procurement Fee") for its involvement in procuring the financing from RE Loans.  [A-81 (TT at 115:8-10, 116:5-6)].  Bar K agreed to defer payment of the Procurement Fee, which was memorialized in a non-interest bearing note December 22, 2004 (the "Second Note") and secured by a second mortgage subordinated to the Mortgage.  [A-81 (TT at 115:8-10, 116:7-12)].  On January 7, 2005, Bar-K assigned five million dollars ($5,000,000.00) of the Second Note to the Barney J. Ng Living Trust.  [A-81 (TT at 115:8-10, 116:7-12)].  As of December 4, 2007, the Company owed Barney J. Ng Living Trust $5 million under the Second Note.  [A-81 (TT at 115:8-10, 116:15-17)].

## B.     The December 4, 2007 Separation Agreement

On December 4, 2007, Schram, the Company, DPS, CCI, Edgecomb and his wife Carolyn Edgcomb, SRCR Investments, LLC ("SRCR"), an investment company owned by the Edgecombs, and Ng, on behalf of himself and the Barney Ng Living Trust (collectively, "the Parties") entered into the Separation Agreement.  [A-81 (TT at 115:8-10, 116:18-24)].  Pursuant to the Separation Agreement, DPS acquired sole ownership of the Company.  [A-88 (Trial Exhibit 2 at p.4)].  In exchange for CCI relinquishing its interest in the Company, Richard Edgecomb and all of his related

7

entities were released from any liability under the Note and the Second Note. [A-91 (Trial Exhibit 2 at p.7)]. The lenders also agreed to release from the Mortgage the 144 acres that Richard Edgecomb had pledged as security. [A-88-A-89 (Trial Exhibit 2 at pp.4-5)]

Schram signed the Separation Agreement on behalf of himself, the Company and DPS. [A-99 (Trial Exhibit 2 at p. 15)]. Schram read and understood the agreement before he signed it, discussed it with his counsel prior to signing it, did not sign the agreement under duress, and would not have signed it if he did not agree with its terms. [A-193-A-194 (TT at 533:13-537:2)]

Paragraph 18 of the Separation Agreement contains integration language that the written agreement "constitutes the entire agreement among the parties with respect to the subject matter of th[e Separation] Agreement". [A-98 (Trial Exhibit 2 at p. 14)]. Moreover, Paragraph 13 of the Separation Agreement provides that the agreement "may be amended only by a writing signed and delivered by all parties hereto." [A-97 (Trial Exhibit 2 at p. 13)].

Pursuant to Paragraph 8 of the Separation Agreement, Schram "irrevocably agree[d] to guarantee full payment of the Note and the Second Note according to their terms". [A-91 (Trial Exhibit 2 at p. 7)]. The Separation Agreement contains no provision relieving Schram of the Guarantee short of the Company's repayment of the Note and the Second Note. [*Id.*; A-83 (TT at 151:12-152:4)]. "In consideration for

the said [G]uarantee, R.E. Loans, LLC and Barney J Ng Living Trust, as the holders of the Note and Second Note, respectively, agree[d] not to cause the Note or Second Note to be in default for any reason whatsoever prior to March 1, 2008." [A-91]. Ng did not place either note into default prior to March 1, 2008. [A-83 (TT at 150:15-151:8].

By October 25, 2010, a different lender foreclosed on a note that secured a Line of Credit unrelated to the RE Loans financing, and which was primary to both the Note and the Second Note. The Note and the Second Note were in default and with this foreclosure, it became readily apparent that the property securing the property would not have sufficient value to satisfy the payoff of either the Note or the Second Note. On October 25, 2010, Ng made the appropriate demand for Schram to make payment as promised under the Guarantee in the Separation Agreement. [A-81 (TT at 115:8-10, 117:3-5)]. Schram refused to fulfill his obligation under the Guarantee. [*Id.*]

Schram, however, contended that his guarantee obligations had been released. As evidence of this release, Schram offered as evidence only a November 16, 2007 e-mail from Ng to the Company's CFO and counsel and copied to Schram. [A-105 (Trial Exhibit 9)] Ng's email responds to the CFO's first draft of proposed terms for the Separation Agreement and indicates additional terms that should be included in the attorney's first draft of the Separation Agreement. [*Id.*]. In particular, Schram relied

on the following language "Schram will personally guarantee the existing loans of RE Loans and Barney Ng. ([B]y separate agreement between the lenders and Steve Schram a further agreement will release Steve Schram's personal guarantee if $1,820,000.00 in principal is paid down on lots 13 and 19 within 2 years of his agreement). If this is unacceptable to Steve, please contact me to discuss." [*Id*.] Although Schram had previously testified in his deposition under oath that this email constituted an offer to him from Ng that he accepted when he signed the Separation Agreement on December 4, 2007, and that his signature to that Agreement also was his consideration for the release agreement, during his direct examination at trial, Schram directly contradicted his prior sworn testimony by testifying that this email memorialized an offer that he had accepted before November 16, 2007. [A-190 & A-196 (*Compare* TT at 506:11- 507:17 *with* TT 553:5-554:10)]. Schram testified that Ng's offer of the Release Agreement is what induced him to enter the Separation Agreement. [A-189, A-191 (TT 501:10-13; 509:9-16)]

On November 30, 2007, five days before the execution of the Separation Agreement, Ng sent another e-mail message to Schram and others, putting them on "notice that the lender is withdrawing all prior concessions that it was willing to make to help you resolve the issues before you." [A-116 (Trial Exhibit 11)]. Although Schram had previously stated under oath that he had not discussed with Ng the contents of this email [A-196 (TT at 562:8-563:21)], during his direct examination,

Schram changed his story, testifying that he spoke with Ng concerning the contents of Ng's November 30, 2007 email, claiming that Ng had told him this email did not apply to their Release Agreement.  [A-190 (TT at 508:10-24)]

During his direct examination, Schram offered additional testimony that contradicted his previous sworn testimony, claiming that the day before he signed the Separation Agreement he spoke with Ng who again assured him that the Release Agreement was in place.  [A-190-A-191 (TT at 508:25-509:16)]  This directly contradicted Schram's deposition testimony that he could not recall any discussions whatsoever with Ng or anyone between the time he received the November 16, 2007 email and his signature on the Separation Agreement.  [A-195 (TT 549:17-552:19)]

## III.    PROCEDURAL HISTORY

On November 4, 2010, Ng filed a complaint against Schram alleging a single cause of action for breach of a guarantee obligation.  [A-3 (Dkt. 1)]  On December 23, 2010, Schram filed an answer and counterclaim alleging, among other things, that contemporaneous with his written guarantee Ng had agreed to release him from the guarantee. [*Id.* (Dkt. 5)]

On January 14, 2011, Ng moved to dismiss Schram's counterclaim. [*Id.* (Dkt. 6)]  In opposing Ng's motion to dismiss, Schram, citing to evidence outside his pleading, asked the Court to convert Ng's motion to a motion for summary judgment and to deny that motion.  [*Id.* (Dkt. 8)]   More than nine months later,

11

and without a hearing, the Honorable Thomas P. Griesa decided to treat Ng's motion to dismiss as a motion for summary judgment and denied the motion. [Dkt. 11] The Court ruled that questions of fact existed with respect "to the purpose and intention lying behind Ng's email . . . . [Additionally, t]here [were] also issues about what occurred between the time of Ng's November, 16, 2007 e-mail and the execution of the Separation Agreement." [Dkt. 11]

On July, 24, 2012, the case was reassigned to the Honorable Ronnie Abrams. [Dkt 18] Thereafter, following a telephonic conference, the Court set January 18, 2013, as the last day to file motions for summary judgment. [Dkt. 21]

Consistent with the Court's order, on January 18, 2013, Ng filed his motion for summary judgment. [Dkt 22]. On February 15, 2013, Schram filed his opposition [Dkt. 28], and, contrary to the Court's order, filed a cross-motion for summary judgment [Dkt. 27].

Seven months later, and without holding a hearing, the Court issued and opinion and order denying both motions for summary judgment ("Order"). [A-56 (Dkt. 48)] In its Order, the Court ruled as a matter of law that the Guarantee was unambiguous, valid and enforceable, rejecting Schram's arguments that the Guarantee failed due to a lack of consideration. [A-68-A-71 (Dkt. 48 at 13-16)] The Court in its Order, however, agreed with Schram that there were "disputed issues of fact . . . precluding summary judgment on Schram's counterclaim." [A-

72 (Dkt. 48 at 17)]  The Court, "reject[ed] Ng's argument that the parol evidence rule would preclude consideration of the Release Agreement, if one [was] found to exist, when assessing the enforceability of the Guarantee."  [A-74 (Dkt. 48 at 19)] The Court continued

> The Wyoming Supreme Court has "depart[ed] from the parol evidence rule if the evidence is used to establish a separate and distinct contract . . . . *Beldon*, 156 P.3d 324. The relevant question here is whether the release agreement constitutes a "separate and distinct contract."

[*Id*.]  Citing to Ng's November 16, 2007 email, the Court stated that "Ng explicitly referred to the release as a "separate agreement . . . ."  [*Id*.] Without citing to any authority, the Court continued that "[t]he fact that Schram deemed his signature on the Separation Agreement to be acceptance and consideration for the Release Agreement does not prohibit the Court from treating them separately."  [A-75 (Dkt. 48 at 20)]

In its Order, the Court also concluded that "the Release Agreement is not inconsistent with the Guarantee."  [*Id*.]  Instead, it "merely provided a means by which Schram might be discharged from that [irrevocable] obligation" to guarantee payment in full.  [*Id*.]  The Court stated

> [t]his conclusion is in accord with the Wyoming Supreme Court's ruling in *Belden v. Thorkildsen*, 156 P.3d 320 (2007), that a "side deal" deal between the plaintiff and defendant in which the defendant agree to repay plaintiff for a note she paid off to the bank could be considered by the Court.

[*Id.*]

On November 14, 2013, the Court held its Final Pretrial Conference. During the conference, the Court noted that Ng had filed motions *in limine* and that Schram had not filed any opposition. The first motion, relying on the parol evidence rule, sought to exclude evidence that would call into question the Court's conclusion that the Guarantee was a valid and enforceable agreement. The Court ultimately denied the motion, concluding that such evidence was relevant to prove the existence of the separate release agreement and would be admissible with a limiting instruction for such a purpose only. [A-77-A-79 (TT 4:10-9:1)]

Having decided that parol evidence would be admissible for purposes relevant to the Release Agreement, the Court denied Ng's second motion *in limine*, which sought exclusion of all evidence relevant to the Release Agreement, concluding that Ng's motion essentially asked the Court to reconsider its Order. [A-77 (TT 3:16-4:9)]

Trial began on November 19, 2013, with jury selection. After the jury was excused for the day on November 20, 2013, the Court held an initial charging conference. During this conference counsel for Ng sought an instruction requiring Schram to prove damages and argued that Schram's inability to prove any damage independent from the Guarantee further demonstrated that the Release Agreement was not an agreement separate and distinct from, and independent of, the

14

Guarantee.  [A-178, A-200 (TT 422:18-424:23; 595:24-596:7)]  The Court allowed Schram to proceed with his claim based on nominal damages and added to the verdict form a question allowing the jury to find nominal damages.  [A-200 (TT 600:12-25)]  Ng further argued for the jury to determine whether the Release Agreement was a contract separate and distinct from, and independent of, the Guarantee.  [A-178-A-181 (TT 444:10-453:24)]  While the Court agreed to generally instruct the jury on the parol evidence rule, the Court concluded that the determination of whether a parol, contemporaneous agreement is separate and distinct from, and independent of, an unambiguous, integrated writing is a question for the Court and not the jury to decide.  [A-213-A-214 (TT 622:12-627:8)]

On November 21, 2013, after Schram rested his case, Ng moved for judgment as a matter of law on the grounds that the parol evidence rule barred any evidence of the Release Agreement and that Schram had failed to meet his burden of proving any breach of contract by failing to introduce any evidence that he suffered any compensable damages arising from any alleged breach.  [A-199-A-200 (TT 593:6-594:19)]  The Court denied the motion.  [A-200 (TT 594:18-19)]

On November 22, 2013, the jury returned a verdict in favor of Schram, finding that he had proven the existence of a Release Agreement, that the conditions for release had been met, that Ng had breached that agreement and that Schram was entitled to nominal damages.  [A-234]

On December 9, 2013, Ng filed his motion for judgment as a matter of law, or in the alternative for a new trial. On July 31, 2014, again without hearing oral argument, the District Court denied Ng's motion. Ng subsequently initiated this appeal on August 14, 2014.

## SUMMARY OF THE ARGUMENT

As set forth in greater detail below, the District Court wrongfully admitted - over Ng's objections - Schram's proffered evidence of a purported oral agreement between Schram and Ng releasing Schram from Schram's obligations to guarantee full payment of a loan that Schram, to which Schram agreed in a written contract signed by both Schram and Ng. By permitting the jury to conclude that Schram's obligations were released by an event subsequent to the assumption of his obligations under the written Guarantee, the District Court ignored Wyoming law that prohibits a non-written contemporaneous agreement from releasing a party from obligations established in a written agreement.

Under long-standing Wyoming law - the governing law of this contractual dispute, the parol evidence rule bars the introduction of evidence that would alter the consideration provided for in a written agreement. Here, the written agreement provides that in exchange for the irrevocable guarantee, RE Loans and Ng agreed not to place the notes in default prior to March 1, 2008. The Release Agreement, therefore, would necessarily alter the consideration given RE Loans and Ng for

16

their forbearance of entering default on the loans. Nevertheless, the District Court permitted Schram to introduce evidence and argue that the non-written Release Agreement released him from his obligations under the written guarantee despite the fact that the Release Agreement altered the consideration given for the forbearance.

Furthermore, the non-written Release Agreement is not - and cannot be - separate and distinct from or independent of the written Guaranty - the exception to Wyoming's parol evidence rule that the District Court applied in making its erroneous ruling. One is hard-pressed to imagine any more transparent example of two agreements that are the opposite of separate and distinct or independent than where one non-written agreement sets forth a subsequent condition releasing a party from an irrevocable obligation established through another written agreement. An agreement that releases an obligation is necessarily dependent upon another agreement that creates the obligation so released. Nevertheless, relying on a flawed reading of the Wyoming case *Belden v. Thorkildsen*, 156 P.3d 320 (2007), the District Court erroneously concluded that the non-written Release Agreement was separate and distinct from the written Guaranty.

## LEGAL ARGUMENT

**I.**     **Standard of Review for Denial of Motion for Judgment as a Matter of Law and for New Trial**

The Second Circuit reviews *de novo* a District Court's denial of a post-verdict motion for judgment as a matter of law in accordance with Rule 50. *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 133 (2d Cir. 2005); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). In making this *de novo* review, the reviewing court applies the same standard for granting a motion brought under Rule 50 as the District Court. *Id.* A judgment as a matter of law pursuant to Rule 50 is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 120 (2d Cir. 1998). "The standard for granting judgment as a matter of law 'mirrors' the standard for granting summary judgment." *Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F.Supp.2d 237, 240 (S.D.N.Y. 2012) (granting motion for judgment as a matter of law). Since Schram stipulated to his obligations to the extent that they were not released by the alleged parol release agreement, Ng's motion, therefore, should have been granted if the parol evidence rule barred the admission of any evidence concerning that purported release agreement.

Because the parol evidence rule is not a rule of evidence, but a principle of substantive law, the District Court's rulings concerning it do not fall within its

discretion.  *See Bushnell v. Elkins*, 245 P. 304, 306 (Wyo. 1926) (noting that the parol evidence rule "is not in fact a rule of evidence, but a rule of substantive law.").  Because the District Court's error relates to an issue of substantive law, and not evidence, the Appellate Court, reviews decisions concerning the District Court's rulings regarding the parol evidence rule *de novo*.  Moreover, the District Court's use of a limiting instruction to the jury cannot correct its error of substantive law in permitting a written and enforceable guarantee to make full payment on a loan to be discharged by the fulfillment of a subsequent condition set forth in a contemporaneous non-written release agreement.  The District Court based its decision on its legal determination that the non-written release agreement was a separate agreement from the underlying written Guarantee Agreement.

Because this determination is - as the District Court acknowledged - within the provenance of the Court and not the jury - a jury instruction purporting to address the application of the parol evidence rule cannot fix the error without inviting the jury to invade the proper realm of the judge.  In this sense, the instant case presents a different situation than those in which the District Court issues an instruction to the jury limiting their use of parol evidence to a determination of whether the contract was tainted by fraud.  *See infra*, Section II discussing Schram's admission that fraud was neither alleged nor proven.  The existence of

fraud - unlike the determination of whether contracts are separate and distinct or independent from one another - is a question for the jury - not the court.

Alternatively, the improper admission of evidence inconsistent with the parol evidence rule warrants a new trial. The Second Circuit reviews the denial of a motion for a new trial under Rule 59 under an abuse of discretion standard. *Presley v. U.S. Postal Service*, 317 F.3d 167, 173 (2d Cir. 2003). The Supreme Court articulated the standard for a new trial long ago in *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940).

> The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

*Id.* at 251; Fed.R.Civ.Pro. 59(a)(1)(A).

## II.     Operation of the Parol Evidence Rule under Wyoming Law.

"No rule of law is better settled than one which excludes, as incompetent, parol testimony to vary the terms of a written instrument, or to prove a parol contemporaneous agreement at variance from the writing, in the absence of any allegations of fraud, accident, or mistake." *Demple v. Carroll*. 133 P. 137, 139 (Wyo. 1913) (because evidence insufficient to sustain a charge of fraud, court did not error denying leave to amend or in excluding parol evidence attempting to alter

or vary the terms of the written agreement); C.T. Drechsler, Annotation, *Parol Evidence Rule as Applied to Written Guaranty*, 33 A.L.R. 960, 21 (1954) ("Protecting, as it does, the inviolability of written contractual instruments, the [parol evidence] rule is . . . clearly one of the most valuable precepts found in the law.")

This case concerns the latter purpose of the parol evidence rule – evidence of parol agreements. Since Schram brought no claim of fraud, accident, or mistake, at issue is whether the Release Agreement is "'inconsistent with the writing'" only. *Belden*, 156 P.3d at 324. (quoting *Western Nat. Bank of Lovell v. Moncur*, 624 P.2d 765, 771(1981)); *North American Uranium Inc. v. Johnston,* 316 P.2d 325, 331 (Wyo. 1957) ("Fraud and mistake must not only be proven, but must also be pleaded if the parol evidence rule is not to apply."). A prior or contemporaneous separate parol agreement between the parties is not inconsistent with a writing if it is "'***separate and distinct from, and independent of***, the written instrument, has not been merged in, or superseded by such instrument and does not contradict, conflict with, or vary the express or implied provisions thereof or deal with a definite and particular subject matter which the written instrument expressly or impliedly undertakes to cover.'" *Moncur*, 624 P.2d at 771 (emphasis added) (quoting *Lefforge v. Rogers*, 419 P.2d 625, 627 (1966)).

The parol evidence rule "is not in fact a rule of evidence, but a rule of substantive law." *Bushnell v. Elkins*, 245 P. 304, 306 (Wyo. 1926) (prior objection not required for court to consider whether evidence violated parol evidence rule on appeal). "When parties have deliberately put their engagements in writing, and such writing is complete on its face, and is certain and definite as to the objects of their engagement, it is conclusively presumed that the whole contract of the parties and the extent and manner of their undertaking was reduced to writing, and cannot be contradicted, altered, added to, or varied, by parol or extrinsic evidence." *Id.* "Such parol testimony is not excluded because of no probative value, but because it is against the policy of the law that written contracts should be overturned in that manner." *Id.* "It has long been recognized by the courts that a different rule would soon render instruments in writing of no value, and the temptations to commit perjury would be increased." *Id.*

While the parol evidence rule does not "prevent . . . . [the] showing that the contract entered into was in fact not a contract, or that it was void or voidable for some other reasons recognized by law, as for instance for fraud," "[a] man cannot defeat the parol evidence rule by simply claiming that the promises made were fraudulent, if they were not so in fact, or not such as the law recognizes as fraudulent." *Bushnell,* 245 P. at 307. "'A representation, which is promissory in its nature, which relates to the future, or which depends upon contingencies that

may or may not happen, furnishes no foundation for a claim of fraud or deceit.'"

*Id.* (quoting *First National Bank v. Swan*, 23 P. 743, 750 (1890)).

In *Bushnell*, an action was brought to collect on a $200 promissory note given in exchange for the purchase of share in a corporation. At trial, the defendant "introduced testimony to the effect that, in order to induce him to subscribe to the capital stock . . . and to execute the promissory note," the plaintiff represented that 8% of his purchases from the company would be credited against the promissory note and that the promissory note ultimately would be fully repaid from such subsequent purchases. *Bushnell,* 245 P. at 306. At trial, the jury returned a verdict in favor of the defendants, and the plaintiff appealed. In reversing the jury verdict, the Wyoming Supreme Court held that "[i]f proof of this unperformed agreement not to hold [defendant] upon this note, in plain contradiction to its terms, can be admitted to destroy his liability upon it, then any unperformed oral agreement made at the time a written contract or note is executed may be admitted, under the claim of fraud to defeat the terms and purpose of the agreement. . . . Written instruments, under the admission and use of such proof to defeat them, would be of little value, and altogether uncertain, and of no more strength than the oral agreements." *Id.* at 307.

In response to a direct question from the Court, Schram's counsel acknowledged that he could not plead fraud in this case as means for defeating

application of the parol evidence rule. [A-178 (TT 440:1-12)] Irrespective of this admission, Schram's counsel focused his closing argument on an alleged "con" Ng perpetrated on Schram to induce him to sign an irrevocable guarantee of full payment of the notes. [A-215 (TT 662:25 ("Unfortunately, Steve Schram was essentially conned."); 663:11-14 ("he only signed because of repeated promises, oral and written, that it would be released, promises which turned out to be false."))].

### III. Evidence of the Release Agreement Conflicts with Wyoming's Application of the Parol Evidence Rule.

#### A. The Release Agreement Alters the Consideration Given for the Guarantee

Schram testified that the Release Agreement induced him to execute the Separation Agreement and that his signature on the Separation Agreement, *i.e.*, the Release Agreement, was consideration for him to execute the Separation Agreement. [A-189, A-191 (TT 501:10-13; 509:11-16)] In the absence of a permissible claim of fraud, courts applying Wyoming law uniformly hold that a separate agreement that allegedly induced a party to execute an integrated written agreement is ***not*** an agreement that is "separate and distinct from, and independent of, the integrated writing," and, therefore, the parol evidence rule bars admission of evidence of such a separate oral agreement. *Bushnell,* 245 P. at 306; *Cary v. Manfull*, 287 P. 433, 436 (1930) (affirming exclusion of evidence of separate oral

24

agreement to include the furniture in a home sale induced plaintiff to sign purchase agreement for home); *Barrett v. First Nat. Bank of Green River*, 62 P.2d 318, 320 (Wyo. 1936) (affirming exclusion of separate parol agreement that leasee would pay taxes and other expenses); *Stickney v. Hughes*, 75 P. 945, 949 (Wyo. 1904) (affirming exclusion of evidence of oral agreement to obtain release of property interest was consideration for written contract).

In its Order, this Court recognized that under Wyoming law "the parol evidence rule bars the introduction of evidence that would ***alter*** the consideration provided for in a written agreement."  [A- 75 (Dkt. 48 at 20 n. 7 (citing Cary) (emphasis added))]  Paragraph 8 of the Separation Agreement provides that "[i]n consideration of said guarantee . . . R.E. Loans, LLC and [Ng], respectively agree not to cause the Note or the Second Note to be in default for any reason whatsoever prior to March 1, 2008."  [A-91 (Trial Exhibit 2 at 7)]  Since the Release Agreement, which Schram testified induced him to enter the Separation Agreement, would alter the consideration given RE Loans and Ng for the forbearance of defaulting on the notes, the parol evidence rule bars admission of any evidence of the Release Agreement because it alters the consideration given for the guarantee.

> **B.    The Release Agreement is not Separate and Distinct From or Independent of the Guarantee within the Meaning of Wyoming Law**

Even if Schram had not testified that the Release Agreement induced him to execute the Separation Agreement, a contemporaneous, separate agreement discharging an obligation set forth in an integrated written agreement is not separate and distinct from, or independent of, the writing as required to meet the exception to Wyoming's parol evidence rule.

The only case the District Court or Schram have cited as support that the Release Agreement is not subject to the parol evidence rule is *Belden.* The holding and rationale adopted by the Wyoming Supreme Court in *Belden,* however, does not bear the weight the District Court placed upon it. *Belden* – which was not discussed in great detail in either the briefing of the parties or the opinions of the District Court – stands only for the unremarkable proposition that proof of a purely collateral contract distinct from, and independent of, the written agreement, is permissible, even though it relates to the same general subject matter and grows out of the same transaction.

In *Belden*, an employee agreed in writing to purchase for $180,000 a 30% interest in the apparel business that employed him from an owner leaving the business. *Belden*, 156 P.3d at 322. Unable to pay the $180,000 immediately, the employee and the business's other remaining owner borrowed the $180,000 from a bank to pay the departing owner with the employee and the remaining owner pledging their interests as collateral. *Id.* When the employee was unable to make

the monthly payments due on the bank note, the business began paying the obligation with the employee allegedly orally agreeing with the other owner to repay the company from future bonuses and commissions. *Id.* at 323. Subsequently, this note was paid in full with proceeds from a second note between the bank and a new limited liability company formed by the employee and the other owner, with two new owners. *Id* at 322. Thereafter, the employee was fired, and the remaining owner was forced to pay off the remaining balance of the loan to protect the assets that had been pledged as security for the second loan. *Id.* at 322. At trial, the lower court ruled that the employee was not personally liable for the $180,000 obligation, concluding that the parol evidence rule barred plaintiff's contention that defendant had "orally agreed to repay the debt with commissions and bonuses."

In support of the lower court's decision, the employee argued on appeal that he could not be personally liable on the first note because it was discharged by the second note, or on the second bank note because he signed the note as the manager of the limited liability company only. *Id.* at 324. In reversing the lower court's decision, the Wyoming Supreme Court rejected the employee's contention that the relevant question was his personal liability on the second bank note. "The dispute between the parties does not concern the terms of the notes with the bank, but rather whether, there was a separate shared intent that [the employee]

27

ultimately be responsible for the debt." *Id.* The employee's agreement to reimburse the business and plaintiff for their payment of the $180,000 owed under the first and the second note which was used by the employee to purchase a 30% interest in the company could not contradict, alter, add to, or vary in any way the company's obligation to repay the amount owed under the second note.

In *Belden*, the parties to the second note – the bank and the company – are completely distinct from the parties to the parol agreement -- the employee and the other owner. By contrast, here, the parties to the unambiguous, irrevocable Guarantee are the same as those to the purported oral release agreement. In *Belden*, the alleged oral agreement between owners of a company concerning their respective responsibility for reimbursing the company's debt did not alter, add to, or vary in any way the company's obligation to the bank on the note. Again, by contrast, here, the alleged oral agreement discharging Schram from his Guarantee obligation upon the occurrence of a particular event without question alters, adds to, or varies the relationship between Ng and Schram with respect to the otherwise irrevocable written Guarantee between them.[2] The fact of this litigation

---

[2] The contemporaneous, partially written and partially oral, separate Release Agreement at issue in this case must be distinguished from the parties' ability by subsequent agreement to orally agree to release or extinguish a guarantee obligation. *See Wright v. Krouskop*, 108 P.2d 282, 268 (Wyo. 1940) (court erred in excluding evidence that note subsequently satisfied by oral agreement to receive partnership interest as payment).

necessarily makes the distinction plain because, absent the alleged parol oral agreement, Schram's obligations under the Guarantee remain in place and are now due and payable.

Admittedly, *Belden* does not address a guarantee obligation, and there is no case decided under Wyoming law specifically addressing an oral agreement related to a transaction that resulted in a guarantee obligation. The parol evidence rule, however, applies with equal force to guarantees. *See Gilbert v. Moline Plow Co.*, 119 U.S. 491, 494 (1886) ("The court was right, therefore, in not permitting the defendants to explain or qualify that guarantee by parol evidence."); *Cargill Com'n Co. v. Swartwood*, 198 N.W. 536, 539-40, 159 Minn. 1 (Minn. 1924) (oral agreement limiting guarantee to a particular time inadmissible). Other jurisdictions confronting the issue presently before this Court have universally precluded evidence of any parol agreement that otherwise would render an irrevocable guarantee conditional or terminable for reasons other than the payment of the underlying debt. *See*, e.g. *Mellon Bank Corp. v. First Union Real Estate*, 951 F. 2d 1399 (3d Cir. 1991) ("a written contract which gives one party an unconditional right precludes the other party from using parol evidence to establish a condition on the exercise of the unlimited right the written text contains."); *Bower v. Weisman,* 674 F. Supp. 113, 117 (S.D.N.Y. 1987) ("In a case such as this where a note appears on its face to be a completely integrated,

unconditional promise to pay, and where the evidence of oral agreement sought to be introduced is at variance with the terms of the obligation, the parol evidence rule applies.").

The facts of *Moncur* further distinguish the facts of the present case from an instance where Wyoming law would find a parol agreement sufficiently separate and distinct from, and independent of, an integrated writing to fall within an exception to the parol evidence rule. In *Moncur,* two separate debt obligations were at issue. The first being a line of credit extended to a partnership that owned a cattle business, and the second being one of the partner's personal farming businesses. The jury ultimately returned a verdict that the bank breached its obligation to continue a line of credit and awarded the partner damages arising from the financing of his personal farming business. On appeal, the bank argued that the lower court erred in admitting evidence concerning the agreement relative to providing financing to the partner's farming operations because the notes that made up the line of credit were the parties' agreement. The Wyoming Supreme Court disagreed stating that "[t]he testimony concerning the agreement to provide financing for [the partner's] farming operation was not in the nature of negotiations leading to the execution of the agreement set forth in the notes." *Moncur*, 624 P.2d at 771.

The most analogous case to the issue on appeal that has been decided under Wyoming law is *Cordova v. Gosar*, 719 P.2d 625 (Wyo. 1986). *Cordova* concerns a deed that covered two parcels of land that was conveyed through a sale from Gosar to Cordova. Following execution of the purchase and sale agreement, Cordova occupied one parcel and Gosar continued to occupy her home on the other. Twelve years later, when Cordova made his final payment on the purchase price that allowed the escrow company to release the deed to the property to him, Cordova served a notice to quit on Gosar. In response, Gosar argued mutual mistake with respect to the deed – that the sale was not to cover the parcel of land she occupied. In response, Cordova argued that he had a separate oral agreement with Gosar entered contemporaneously with their executed purchases and sale agreement that permitted her to remain in her home for a period of time. Cordova appealed from the grant of summary judgment invalidating the deed due to mutual mistake, and, in particular, the lower court's exclusion of evidence supporting the alleged separate oral agreement. In affirming the lower court's decision, the Wyoming Supreme Court held that "[t]he court was also correct in determining that extrinsic evidence submitted for the purpose of showing that an oral agreement was made contemporaneous to the written agreement which added to the terms of the written agreement *does* violate the parol evidence rule." *Id.* at 640 (emphasis in original).

31

Here, like in *Cordova*, the parties' integrated, written agreement was unconditional – (1) in *Cordova*, the unconditional transfer of property; and (2) here, an irrevocable guarantee of full payment of an obligation. In both, one party attempted to introduce evidence of a separate oral agreement altering an otherwise unconditional writing – (1) in *Cordova*, granting a right to remain on one parcel for a period of time; and (2) here, discharging an irrevocable guarantee of full payment for something less than full payment. In *Cordova*, the Wyoming Supreme Court concluded that "this evidence [of a separate oral agreement] is clearly inadmissible under the parol evidence rule . . . ." *Id.* at 641. In its Order in this case, the District Court cited *Cordova* as standing for the proposition that parol evidence is inadmissible "to alter or enlarge the terms of an agreement." [A-75 (Dkt. 48 at 20 n.7)] Curiously, however, the Court concluded that a separate oral agreement that "provided a[n alternate] means by which [the Guarantee] might be satisfied or discharged" "did not alter the terms of the Guarantee." [*Id.*] In making this conclusion the District Court seemingly ignored the conclusion that permitting the Guarantee whereby Schram "irrevocably agreed to guarantee **full payment** of the Note and the Second Note" [A-91 (Trial Exhibit 2 at 7 (emphasis added))] to be satisfied or discharged by anything other than such "full payment" necessarily alters the terms of the Guarantee.

No case decided under Wyoming law provides any support for the proposition that a contemporaneous separate oral agreement providing means for discharging an obligation set forth in an unambiguous, integrated writing can be an agreement separate and distinct from, and independent of, the written agreement. In fact, all reported cases decided under Wyoming law are to the contrary, supporting the principle that an oral agreement providing a mechanism to discharge an otherwise "irrevocable agree[ment] to guarantee payment in full" necessarily would "'contradict, alter, *add to*, or vary the plain terms of the writing" and would be inadmissible under the parol evidence rule. *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238, 1245 (10th Cir. 1990) (quoting *Bethurem v. Hammett*, 736 P.2d 1128, 1137 (Wyo. 1987) (emphasis in *Applied Genetics*).

### IV. No Reported Opinion has Held that a Contemporaneous Oral Agreement Providing a Method to Discharge a Financial Obligation to be Separate and Distinct From, and Independent of a Writing and Not Subject to the Parol Evidence Rule.

During trial, the District Court repeatedly asked for citation to a factually analogous case. Specifically, the District Court wanted citation to an instance where, even though a Court had already determined as a matter of law that a written obligation was valid and enforceable, a jury was still precluded from considering evidence relevant but parol to the written obligation when that

evidence was also relevant to an agreement separate and distinct from, and independent of, the obligation pursuant to operation of the parol evidence rule.

For an obvious reason, no such case exists.  The parol evidence rule does not apply to contemporaneous agreements that truly are separate and distinct from, and independent of, an integrated writing.[3] *Belden*, 156 P.3d at 324; *See Canadian Bank of Commerce v. Berg*, 17 F.2d 867 (9th Cir. 1927).  In the cases allowing for proof of a separate, contemporaneous agreement, the evidence relevant to prove anything with respect to the alleged separate, contemporaneous agreement was not similarly relevant to anything in relation to the integrated written agreement, *e.g.*,

---

[3] This instance must be distinguished from separate agreements entered into **after** a written guarantee was executed.  Courts will permit parol evidence to prove a later agreement to extinguish a written guarantee as well as evidence that the guarantee has been satisfied, waived or abandoned.  *See, e.g., Dambley v. Duconge*, 4 So.2d 616, 617 (La. Ct. App. 1941) ("it is well settled that parol testimony is admissible to show the payment or discharge of an obligation").  Similarly, some courts will permit parol evidence of a separate contemporaneous agreement to prove that a written guarantee had not yet become effective. *See Dayvault v. Baruch Oil Corp.,* 231 F.2d 413 (1956) ("'Parol evidence is admissible to show a condition precedent relating to the taking effect of a written instrument', and that '[a] collateral parol agreement that a contract shall become effective only on certain conditions and contingencies is not an oral contradiction or variation of the written instrument]; *compare  Bank Leumi Trust Co. of New York v. Wulkan*, 735 F. Supp. 72 (S.D.N.Y. 1990) ("Parol evidence is not admissible to prove a condition precedent to a written document if the condition varies or contradicts the express terms of the writing.").  Neither of these factual scenarios, however, have any application here.

34

the evidence relevant to the contemporaneous, separate agreement did not tend to contradict, alter, add to, or vary the plain terms of the writing.

*Berg* provides another example of a contemporaneous contract distinct from an unambiguous written agreement. In *Berg,* the Ninth Circuit affirmed the admissibility of a separate parol agreement that any proceeds received from the sale of a truck would be used to reduce the limits on a guarantee. The *Berg* Court stated that

> To us it seems clear that the written guaranty remained unaffected by the bill of sale and that the parol testimony had no tendency to alter its terms. It remained, as it was before, the appellee's undertaking to pay the bank the amount named therein in case of the failure of the logging company to pay it. The only effect of the parol evidence was to show that, before executing the guaranty, the appellee had received from the logging company security to protect him against loss by reason thereof.

*Berg*, 17 F.2d at 868.

In both *Belden* and *Berg*, evidence of the separate, contemporaneous agreements – (1) in *Belden*, evidence of the agreement between the business owners, and (2) in *Berg*, evidence of the use of proceeds from the sale of a truck – would not be relevant to the enforceability of the unambiguous, written

obligations.[4]  Here, by contract, the District Court constantly confronted the predicament that evidence "relevant" to prove the existence of the Release Agreement – *e.g.* testimony that the Guarantee would not be enforced – directly conflicted with the District Court's determination that the Guarantee was valid and enforceable.  Although faced with this Gordian knot, the District Court refused to reconsider whether a contemporaneous agreement "provid[ing] for a means by which [an irrevocable agreement to guarantee payment in full] might be satisfied or discharged" short of payment in full, may not be separate and distinct from, and independent of, the Guarantee.  [A-91 (Trial Exhibit 2 at 7)]

Over the preceding two centuries of jurisprudence, each and every reported opinion confronting this same issue has concluded that a contemporaneous agreement releasing a financial obligation necessarily contradicts, adds to, or

_____

[4] *Michigan Bank Nat. Ass'n v. J. Kahlich, Inc.*, 179 S.W.2d 29 (Mich. App. 1970) is another instance where a defendant was permitted to prove a parol oral agreement as a defense and counterclaim with respect to a written guarantee.  As a defense to the amount owed on a written guaranty, the guarantor alleged that the bank had orally agreed not to honor any checks drawn on his account that he had not co-signed and that the bank breached by so honoring such checks.  In affirming the denial of summary judgment, the Court of Appeals for Michigan recognized that the bank may prove that the checking account was intended to be collateral for the guaranty, which would make evidence of an oral agreement as to that collateral inadmissible under the parol evidence rule, but there existed a conflict in the evidence as to whether the account was unrelated to the guarantee and constitute a distinct breach by the bank.  *Id.* at 32.

varies the plain terms of the written obligation.[5] A contemporaneous, separate agreement releasing an obligation cannot be distinct from, and independent, of the obligation itself. Thus, any parol evidence of such an agreement – including any evidence of the purported release agreement offered by Schram – is necessarily barred. Similarly, where, as here, the integrated writing sets forth the consideration given in exchange for the guarantee, courts consistently preclude evidence of contemporaneous parol agreements alleged to have induced the guarantor to enter the obligation.[6]

_____

[5] C.T. Drechsler, Annotation, *Parol Evidence Rule as Applied to Written Guaranty*, 33 A.L.R. 960 (1954). *See also* as attached to the Joint Appendix at __ (an appendix to Docket 78) a summary of the more relevant cases reported over a nearly 200 year period holding that a contemporaneous oral agreement to discharge an obligation contained in an unambiguous writing is inadmissible due to operation of the parol evidence rule.

[6] *See, e.g.*, *Bower v. Weisman*, 674 F. Supp. 113, 117 (S.D.N.Y. 1987) (Parol evidence rule barred evidence of a separate contemporaneous agreement that defendant would receive a raise in exchange for entering into note agreement); *First Nat. Bank in Dallas v. Love*, 584 S.W.2d 345, 347 (1979) ("The instruments recite a contractual consideration, and that consideration cannot be varied or contradicted by extrinsic evidence.*"); Frank L. Smith Tire Store v. Firestone Tire & Rubber Co*., 68 S.W.2d 577, 580 (1934) (contractual consideration cannot be varied by contemporaneous separate agreement to extend credit).

## CONCLUSION

For the foregoing reasons, Ng respectfully requests that the Second Circuit reverse the District Court's order denying Ng's motion for judgment as a matter of law.

The parol evidence rule as adopted and applied in Wyoming, and consistent with its uniform application throughout the United States, renders inadmissible any evidence of the alleged contemporaneous Release Agreement. Schram proffered the contemporaneous Release Agreement for the sole purpose of discharging him from the Guarantee on terms inconsistent with the written Guarantee. Similarly, Schram proffered the Release Agreement as consideration for him executing the Guarantee, which necessarily added to the consideration articulated in the written Guarantee. No reported opinion on similar facts has found such an alleged separate, contemporaneous agreement to be distinct from, and independent of, a written agreement, and falling within this exception to the parol evidence rule.

The jury simply never should have heard evidence of the purported contemporaneous, separate Release Agreement.   Since Schram has already stipulated to his liability under the Guarantee in the absence of such a Release Agreement, the Second Circuit should – after reversing the District Court's order denying Ng's motion for judgment as a matter of law – order the District Court to set aside the jury's verdict and to enter judgment in Ng's favor.

Respectfully submitted,

LATHROP & GAGE LLP

By:   /s/ Thomas H. Curtin           
        Thomas H. Curtin
        230 Park Avenue, Suite 2400
        New York, NY 10169
        (212) 850-6220

           – and –

        John Shaeffer (admitted *pro hac vice*)
        1888 Century Park East, Suite 1000
        Los Angeles, CA 90067
        (310) 789-4600

        *Attorneys for Plaintiff and Counter Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,972 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Respectfully submitted,

LATHROP & GAGE LLP

By: <u>/s/ Thomas H. Curtin</u>
Thomas H. Curtin
230 Park Avenue, Suite 2400
New York, NY 10169
(212) 850-6220

– and –

John Shaeffer (admitted *pro hac vice*)
1888 Century Park East, Suite 1000
Los Angeles, CA 90067
(310) 789-4600

*Attorneys for Plaintiff and Counter Defendant*